IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROLAND RUDD, also known as ISREAL
AZIZ FARRAHKAN,

           Petitioner,

           vs.                           Case No. 07-3097-JTM

STEPHEN N. SIX, Attorney General of the
State of Kansas,

           Respondent.

MEMORANDUM AND ORDER

Habeas corpus petitioner Roland Rudd, also known as Isreal Aziz Farrahkan, seeks relief

from the sentence of imprisonment imposed by the State of Kansas.  Rudd is an inmate of the El

Dorado Correctional Facility in El Dorado, Kansas.

Evidence produced at Rudd's state trial indicates that Rudd met T.K., the complaining

witness, at a bus station in Wichita, Kansas, on July 25, 2000. Rudd was with a group of people

collecting signatures for a petition, and offered her a temporary job collecting signatures. T.K.

accepted.

Rudd dropped the other signature collectors at a mall, but kept T.K. with him, saying they

were going to a Wal-Mart. However, Rudd drove to a liquor store and then to a hotel. Saying they

needed to pick up some campaign supplies, he led T.K. to one of the rooms. In the room, Rudd

mixed liquor with soda and tried to get T.K. to drink. She refused.  Rudd drank, then offered her

some marijuana, which she accepted. After smoking some marijuana together, Rudd went to the bathroom, and returned wearing only his underwear.

Rudd began fondling and kissing T.K. He continued after she resisted and told him to stop. Rudd then took T.K.'s pants off and forced himself onto her as she struggled with him. In spite of her protests and struggles, Rudd forcefully engaged in sexual intercourse with T.K.

After he was finished, Rudd warned T.K. not to tell anyone, and they went back to the mall to pick up the other signature collectors. They returned to the hotel and, after Rudd left, T.K. told the others what happened. T.K. then called 911 and reported the rape to police.

A subsequent medical examination of T.K. revealed injuries in the vaginal area consistent with non-consensual sex. The examination also revealed Rudd's semen in T.K.'s vagina.

When confronted by police, Rudd first denied that he had any kind of sexual contact with T.K. He claimed to have seen T.K. drinking alcohol with an unknown black male at the hotel, and suggested that she had identified the wrong man.

At trial, however, Rudd claimed that he and T.K. had engaged in mutual masturbation, that he had ejaculated on her, and she must have pushed some of his semen into her vagina herself.

On January 21, 2001, Rudd was convicted of one count of rape, in violation of K.S.A. 21-3502(1)(a), in Sedgwick County, Kansas District Court. The court sentenced him to 272 months imprisonment.

Rudd appealed, arguing (1) the charging document failed to allege the element of intent, (2) Rudd was denied compulsory process, (3) the trial court denied his request for a continuance, (4) the police had no probable cause to arrest him, (5) the evidence was insufficient, (6) the charging document failed to allege a culpable mental state, (7) the prosecutor forced the victim to testify, (8)

the trial court's instructions effectively amended the charging document by eliminating an element of the offense, (9) the trial court violated his right to confrontation by restricting the cross-examination. Rudd's counsel raised the first four arguments, Rudd himself raised the other arguments in a pro se supplemental brief.

On November 1, 2002, the Kansas Court of Appeals affirmed Rudd's conviction. *State v. Rudd*, No. 87,159 (Kan.Ct.App., November 1, 2002). The Kansas Supreme Court denied review on February 4, 2003. Rudd filed for a Writ of Certiorari in the United States Supreme Court, which was denied on October 17, 2003.

On February 6, 2004, Rudd filed a motion for post-conviction relief pursuant to K.S.A. 60-1507 (habeas corpus) in the District Court of Sedgwick County. Case No. 04- CV-612. The court denied the motion on May 20, 2004.

Rudd then appealed, contending that (1) the court erred in determining that there were no exceptional circumstances to justify consideration of his claims, (2) his right of self-representation was violated by the failure of the trial court to allow him to use the telephone, (3) he was denied the right to be present at all critical stages, (4) he was denied access to exculpatory evidence, (5) his representation was damaged because the State did not call several witnesses, (6) the trial court denied his request for a continuance, (7) the judge was not impartial, (8) prosecutorial misconduct, (9) his appellate counsel was ineffective, (10)  and his right to self-representation was violated by various actions of the trial court, including denying him use of a telephone, his right to confrontation, compulsory process, his motion for a continuance, and excluding him from critical stages of the proceedings, by the prosecution's failure to disclose exculpatory and impeachment evidence, and by ineffective assistance of appellate counsel for failing to raise these issues on direct

3

appeal, (11) the trial court lacked jurisdiction, (12) the state courts improperly amended the rape and criminal intent statutes by judicial construction, (13) Rudd did not knowingly and effectively waive his right to counsel, (14) the magistrate at the probable cause hearing was not neutral, (15) the charging instrument did not allege the element of intent, (16) the trial court erred in admitting the testimony of the nurse, (17) the victim was coerced into testifying, (18) the evidence was insufficient, (19) the prosecutor injected her personal opinions into the case, and (20) Rudd's appellate counsel was ineffective for not raising these issues.

The Kansas Court of Appeals affirmed on September 15, 2006. *Rudd v. State*, No. 94,407 (Kan.Ct.App., September 15, 2006). The Kansas Supreme Court denied review on February 13, 2007.

Rudd then filed this claim for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 on April 11, 2007.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), a petitioner seeking habeas relief must demonstrate that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" (§ 2254(d)(1)), or was an "unreasonable determination of the facts in light of the evidence presented." (§ 2254(d)(2)). The court presumes the factual findings are correct, in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). *See Miller-El v. Cockrell*, 537 U.S. 322, 341, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

A state court decision is contrary to clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth" by the United States Supreme Court, or

"confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different." *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000); *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision is an unreasonable application of clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-408. This court must therefore determine whether the state court's application of clearly established federal law was objectively unreasonable. *Id.* at 409. Even if this court determines that the state court decision incorrectly applied clearly established federal law, a petitioner is entitled to relief only if the application is also objectively unreasonable. *Id.* at 411; *Penry v. Johnson*, 532 U.S. 782, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001).

In addition, the court does not stand to correct errors of state law, and is bound by a state court's interpretation of its own law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

The court has carefully reviewed the various pleadings submitted by Rudd, and while the matter not rendered easy by the disorganized nature of those pleadings, the general outline of his arguments may be summarized, and the court finds that the summary advanced by the Respondent is not inaccurate. Rudd claims asserts: (1) the trial court interfered with petitioner's right to self-representation, (2) he was forced or coerced into self-representation, (3) he was denied his right to be present at all critical stages of the proceedings, (4) T.K. was unconstitutionally forced to testify, (5) the prosecution withheld exculpatory evidence, (6) the court unconstitutionally denied his motion for a continuance, (7) he was denied the right to compulsory process, (8) he was denied the right to confront certain witnesses, (9) the trial court's instructions on the elements of rape modified the law in violation of the Ex Post Facto Clause, (10) the preliminary hearing judge was biased, (11) the

charging document was constitutionally defective, (12) the prosecution failed to properly file the charge against him, depriving the trial court of jurisdiction, and violating his right to due process, (13) the evidence was insufficient to support the conviction, (14) prosecutorial misconduct, (15) the trial court improperly amended the complaint through erroneous jury instructions, (16) the nurse that examined T.K. was allowed to testify, (17) the trial court unconstitutionally restricted petitioner's cross-examination, (18) for various reasons, counsel was ineffective. The court has reviewed each of Rudd's claims and finds that none presents any grounds for awarding the relief sought.

Rudd complains that his right to self-representation was infringed when the trial court did not order the county sheriff to provide him with access to a telephone, rather than using the collect-call only system available in the jail. But self-representation is not a license which frees a jail inmate from all otherwise generally applicable regulations.  A defendant has a constitutional right to self-representation, but that right does not include "many of the traditional benefits associated with the right to counsel." *Faretta v. California,* 422 U.S. 806, 835 (1975). So long as the defendant is warned of those limitations, he will not be heard to complain later that those benefits were not provided.  *Id.*

Thus, the right to self-representation does not imply "further rights to materials, facilities, or investigative or educational resources that might aid in self-representation," nor does it "include a right to conduct one's own research at government expense." *United States v. Wilson*, 690 F.2d 1267, 1271 (9th Cir. 1982). Specifically, the right to self-representation is not violated merely by the enforcement of prison regulations permitting only collect long-distance phone calls. *Allen v. Josephine County,* No. 93-35163, 1994 WL 9131 (9th Cir. Jan. 12, 1994). *See also United States v. Ruedlinger*, No. 97-40012-RDR, 1997 WL 808662, *3 (D.Kan. 1997).

6

Here, Rudd was told of the dangers of self-representation, and was specifically told that since he was in custody, he would face difficulty in locating and interviewing witnesses and otherwise preparing for trial. Rudd stated he understood. (R. XIV, 14.) The Kansas Court of Appeals determined that Rudd knowingly and voluntarily asserted his right to self-representation, with full knowledge of the difficulties he would face preparing for trial while in custody, and that the denial of free long distance telephone service from the jail did not present an unreasonable interference with his right to self-representation. *Rudd v. State*, No. 94,407, 2006 WL 2661168, *4 (Kan.Ct.App. Feb. 13, 2007).   The court finds that this determination was not contrary to, nor involved an unreasonable application of federal law and was reasonably based on the evidence.

The court also rejects Rudd's claim that he was forced to represent himself because his counsel was ineffective.  In fact, Rudd had two counsel, the first a public defender and the second an appointed private attorney.  But he quarreled with both over trial strategy. Each time, a judge warned Rudd against the dangers of self-representation.  He chose to represent himself. (R. XIV, generally; XVIII, 32-37.) The determination by the Kansas Court of Appeals to this effect is a reasonable finding in light of the evidence.

Next, Rudd complains that he was denied the right to be present at all critical stages of the trial.  Specifically, Rudd complains that he was not present when the prosecutor submitted a motion for a material witness warrant to be issued against T.K. He also complains that during the trial the prosecutor sometimes went into court chambers.  There is no indication that any matter relating to the trial was discussed in chambers, except that, as noted by the Kansas Court of Appeals, at one point the judge discussed in chambers with the prosecutor and Rudd's stand-by counsel what

motions would be addressed at a later hearing.   In other words, the meeting was merely a preliminary, scheduling event. *Rudd*, 2006 WL 2661168 at \*5.

None of the events Rudd cites were critical events during the trial, during which he had a right to be present. A defendant has no right to be present at "every second or minute or even every hour of the trial." *Snyder v. Commonwealth of Massachusetts*, 291 U.S. 97, 116, 54 S.Ct. 330, 78 L.Ed. 674 (1934). The right to attend arises "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Twining v. New Jersey*, 211 U.S. 110-111 (1908).

Rudd had no right to attend the motion for the material witness warrant.  The warrant was not directed at him, and he could not have opposed it.  The state courts properly determined that Rudd was not prejudiced by any exclusion from any critical stage of the trial.

Rudd next argues that the trial court should not have heard the testimony of T.K. He contends that the prosecutor threatened to prosecute T.K. for falsely reporting a crime if she did not testify at trial.  But this complaint is no basis for excluding T.K. as a witness, it is merely a matter of the weight to assign her testimony.  And the record reveals that Rudd indeed cross-examined T.K. as to whether she had been threatened or promised anything in exchange for her testimony (R. XX, 41.)  Rudd is not entitled to  relief because the jury chose to give weight to T.K.'s trial testimony.

Rudd argues next that the prosecutor withheld exculpatory or impeachment evidence. Such evidence must be provided to a criminal defendant. *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, he complains that he did not receive the probable cause affidavit supporting the charge against him, a police report, and the motion and supporting affidavit for a material witness warrant on the victim. The Kansas Court of Appeals reviewed the documents in question and determined

they contained no *Brady* material. *Rudd,* 2006 WL 2661168 at *5. The court finds that this was a reasonable factual determination.

Next, Rudd complains that the trial court violated his due process rights when it denied his motion for a continuance.  Rudd asserts that he asked for a continuance on the day of trial in order to obtain an alibi witness.  The record contains no indication of any such request.  The Kansas Court of Appeals noted this absence, but proceeded to address Rudd's claim out of "an abundance of caution." *State v. Rudd*, No. 87,159, Slip Op. at 11 (Kan.Ct.App., November 1, 2002) (Unpublished Opinion). The court concluded that the trial court was within its discretion in denying any such eleventh-hour request where there was no showing the request could not have been made earlier.

The resolution of requests for continuance is reserved to the discretion of the trial court. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). A habeas petitioner premising his claim on a denial of a continuance must show more than an abuse of discretion; relief is appropriate only where the denial is "'so arbitrary and fundamentally unfair that it violates constitutional principles of due process.'" *Case v. Mondragon*, 887 F.2d 1388, 1396 (10th Cir. 1989) (*quoting Hicks v. Wainwright*, 633 F.2d 1146, 1148 (5th Cir.1981). See *United States v. West*, 828 F.2d 1468, 1470 (10th Cir. 1987) (discussing factors relevant to whether court abused its discretion in denying a continuance).

Given the circumstances of the case, the trial court did not abuse its discretion in denying the continuance, assuming it occurred.

Rudd next claims he was denied his right to compulsory process.  Another claim grounded in the trial court's denial of his last minute motion for continuance. He argues of that denying the continuance prevented his obtaining the alleged alibi witness. Rudd has also argued that the trial

court frustrated his right to process by failing to give him the proper witness subpoena forms. *Rudd*, No. 87,159, Slip Op. at 7-8.

Rudd's argument does not support an award of the relief sought. The trial court did not violate Rudd's right to compulsory process, it merely required that Rudd comply with proper procedure for securing the attendance of witnesses. The state court's rejection of Rudd's compulsory process argument was consistent with precedent and reasonable in light of the facts of the case.

Rudd next argues his right to confront a witness -- Justin Estes -- was violated by the trial court. However, Rudd did not present this claim to the state courts. In his direct appeal, he claimed that limitations on his cross-examination on T.K., not Estes, violated his confrontation rights. In his state collateral motion, Rudd argued that the prosecutor's failure to call witnesses, including Estes, violated his right to self-representation but he did not argue a violation of his right to confrontation.

Because Rudd has waived the argument under state law, *Walker v. State*, 216 Kan. 1, 3, 530 P.2d 1235 (Kan. 1975), he may be presented here only by showing 1) the reason for the failure to raise the argument in state court, and 2) demonstrating either actual prejudice, or a fundamental miscarriage of justice would occur if the court did not consider the claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Rudd does not meet this standard. No external factor prevented him from raising the issue in the state courts. *See Coleman*, 501 U.S. at 753. Nor has he demonstrated any prejudice. Finally, no miscarriage of justice would arise from declining to consider the issue, since in this context a miscarriage means an error which probably resulted in the conviction of an innocent man. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Given the compelling nature of the trial evidencel, Rudd cannot demonstrate the existence of any such miscarriage.

Nor does the court find merit in Rudd's argument that the trial court erred in its instructions. According to Rudd, the trial court's instruction on the elements of rape effectively modified the law and thus was illegal as an *ex post facto* change. The Kansas Court of Appeals rejected this without discussion. *Rudd*, 2006 WL 2661168 at *9. The instruction provided:

> The force required to sustain a rape conviction in Kansas does not require that a rape victim resist her assailant to the point of becoming the victim of other crimes. Kansas law does not require that a rape victim be physically overcome by force in the form of a beating or physical restraint in addition to forced sexual intercourse. Kansas law requires a showing that the victim did not consent to the sexual intercourse and that she was overcome by force or fear to facilitate the sexual intercourse.

(R. II, 323.)

This instruction is correct by states the law of Kansas. *State v. Borthwick*, 255 Kan. 899, Syl. ¶ 7, 880 P.2d 1260, 1271 (1994).

Rudd next argues that the judge who presided over the preliminary hearing was biased against him. But a different judge presided over the trial, and Rudd has not demonstrated any right to relief based upon such argument. *See Johnson v. Cody*, No. 91-7066, 1991 WL 240117 (10th Cir. Nov. 15, 1991) (holding that petitioner's claim of a biased preliminary hearing judge did not present a colorable federal issue where the case was tried to a different judge).

Rudd contends that the charging document violated his Sixth Amendment rights. Specifically, he contends that the complaint in his case was defective because "[w]hen instructing the jury, the trial court deleted **unlawfully from** the complaint and charged the jury with intentional conduct." (Dkt. No. 1, § 2254 Pet. at XII) (emphasis in original).

This is a somewhat different claim than Rudd raised in his state court appeals. There, he argued that the complaint was defective because it did not include an element of criminal intent. The Kansas Court of Appeals rejected this argument in Rudd's direct appeal, finding that "[t]he charge

of rape against [petitioner] required nothing more in the way of intent than the intent to commit the

act charged," and "criminal intent was impliedly and sufficiently alleged." *Rudd*, No. 87,159, Slip

Op. at 7. It rejected it again in Rudd's motion for relief under KSA 60-1507. *Rudd*, 2006 WL

2661168 at *9.

In *Valdez v. McKunee*, No. 06-3103-JTM, 2007 WL 1586054 (D. Kan. May 31, 2007), this

court noted:

> The adequacy of a state criminal complaint or indictment presents mainly a question
> of state rather than federal law. *Johnson v. Gibson*, 169 F.3d 1239, 1252 (10th
> Cir.1999). Federal habeas relief may be granted to a state prisoner "only if state court
> error resulted in the deprivation of fundamental rights guaranteed by the United
> States Constitution." *Id.* "A charging document may violate the Sixth Amendment
> by failing to provide a defendant with adequate notice of the nature and cause of the
> accusation filed against him." *Id.*

Rudd's present argument fails. The charging document contained the essential elements of

the offense charged, and gave sufficient notice to Rudd of the nature of the charge against him,

enabling him to bar to any subsequent prosecutions for the same offense. *See United States v.

Kilpatrick*, 821 F.2d 1456, 1461 (10th Cir. 1987) (*citing Russell v. United States*, 369 U.S. 749,

763-64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)).

Rudd next argues that the trial court had no jurisdiction, because the charges were not

properly filed. This is not a basis for relief.  The validity of a charging document is a question of

state law and does not present a basis for federal habeas review.  *Estelle*, 502 U.S. at 67-68. Even

if it did, the court finds no error, since the charge was properly filed after the preliminary hearing

pursuant to K.S.A. 22-2905(1).

The court also finds that the evidence was sufficient to support the conviction.  The trial

evidence is set out early in this opinion. Viewed in the light most favorable to the prosecution, a

rational fact-finder could have determined that Rudd was guilty of the offense charged. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Rudd argues that he was deprived of a fair trial when the prosecutor misstated the law during closing arguments. The Kansas Court of Appeals held that the prosecutor's statements were not a misstatement of the law and fell within the bounds of permissible argument. *Rudd*, 2006 WL 2661168 at *8. This is a question of state law, and the decision by the Kansas court is therefore determinative. *See Estelle*, 502 U.S. at 67-68.

Rudd next argues that the trial court effectively amended the complaint through its jury instructions. The Kansas Court of Appeals held that the complaint was not defective, and the trial court properly instructed the jury in accordance with Kansas law. *Rudd*, No. 87,159, Slip Op. at 3-7, 19-21. No error has been shown in the instructions, and no habeas relief is appropriate.

Rudd argues that the court erred in permitting the testimony of nurse Ann Harrell, who examined the victim. Rudd lodged no contemporaneous objections to Harrell's testimony.

The court finds no basis for habeas relief. Federal habeas review will address questions of the admissibility of evidence under state law only where the evidence was so unfair as to rise to a deprivation of federal rights. *Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001). The Kansas Court of Appeals rejected Rudd's argument on this issue,

Further, contrary to Rudd's allegations, Harrell did not testify independently as to the identity of the perpetrator, or the circumstances of the crime. She testified as to the background information she received from T.K. at the beginning of her examination, for purposes of medical history and potential trauma to guide her investigation. Harrell read T.K.'s statement verbatim, which was

admissible under K.S.A. 60- 460(a).  This court has held that the state statute is consistent with federal constitutional protections.  *Gettings v. McKune*, 88 F.Supp.2d 1205, 1218 (D.Kan. 2000).

Next, Rudd argues that this right to confrontation was violated when the trial court restricted his cross-examination of T.K. The trial court prevented Rudd from asking T.K. about a prior sexual assault, about specific instances of conduct with her mother, and about specific instances of conduct and issues regarding her children. (R. XVII, 31-34; XX, 55-64). The Kansas Court of Appeals denied Rudd's argument on the issue, holding that the restrictions were consistent K.S.A. 60-422, governing evidence of character, and with the state rape shield statute, K.S.A. 21-3525.

Rudd has failed to show any entitlement to habeas relief.  The trial court properly exercised its discretion to exclude evidence which was irrelevant and improper under Kansas law.

Finally, Rudd argues that his appellate counsel was constitutionally deficient. Specifically, he complains that counsel failed to raise the various issues he has advanced herein.

Rudd's argument requires proof that his counsel's performance fell below an objective standard of reasonableness, and that the  deficient performance prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Where a state court has concluded that counsel was not deficient, this court will grant habeas relief only where the state court's decision is an unreasonable application of clearly established federal law. *Trice v. Ward*, 196 F.3d 1151, 1160 (10th Cir.1999).

The court finds that appellate counsel was not deficient for raising the meritless claims Rudd has advanced here.  Counsel has wide discretion in determining which arguments to present, and the tactical decision to avoid weak arguments does not amount to a deprivation of constitutional rights. *Martin v. Kaiser*, 907 F.2d 931, 936 (10th Cir. 1990).

In addition to his claims for relief, Rudd has also moved for an evidentiary hearing.  Prior to the transfer of the case to the undersigned, Judge Crow found "no specific allegations which appear to satisfy the criteria for an evidentiary hearing" under 28 U.S.C. § 2254(e)(2).  Although Rudd has repeated his request for an evidentiary hearing, the request is conclusory and he has failed to demonstrate error in  Judge Crow's earlier decision. Under the AEDPA, an evidentiary hearing is appropriate where the factual basis for a petitioner's claims could not have been discovered earlier with due diligence, or the petitioner demonstrates that no reasonable fact-finder could have found him guilty in the absence of constitutional error. 28 U.S.C. § 2254(e)(2)(A) & (B). Rudd has made no such showing, and his claims are appropriately resolved by this order.

IT IS ACCORDINGLY ORDERED this 23rd day of September, 2008, that the Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is denied; Petitioner's Motion for Evidentiary Hearing (Dkt. No. 24) is also denied.

   s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE